IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

vs.                                                        **3:06cr86/LAC**
                                                           **3:07cv497/LAC/MD**

**NICHOLAS CUNNINGHAM**

---

### REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 and supporting memorandum of law (doc. 40 & 48). The government has filed a response (doc. 52) and the defendant has filed a reply (doc. 55). The parties have also submitted supplements pursuant to court order. (Doc. 59 & 61). The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

**I. BACKGROUND**

Defendant was charged in a single count indictment with conspiring with other persons to distribute and possess with intent to distribute 50 grams of more of cocaine base, commonly known as "crack cocaine," in violation of Title 21 U.S.C. § 841(b)(1)(A)(ii) and (iii). The government filed a notice of enhancement information

to establish that defendant had a prior conviction for a controlled substance offense. (Doc. 10).

Represented by appointed counsel James Scroggins, defendant entered a written plea and cooperation agreement. (Doc. 22). The agreement provided that defendant faced a mandatory minimum term of twenty years imprisonment, up to a maximum of life. (Doc. 22 at 1).

The PSR set defendant's base offense level at 34 due to the quantity of drugs attributable to him. (PSR ¶ 26). His total offense level was 31 after a three level adjustment for acceptance of responsibility. (PSR ¶ 35). His criminal history category was II, which yielded a guidelines range of 121 to 151 months. Because the mandatory minimum sentence of 240 months exceeded the guideline range, the guideline imprisonment becomes 240 months, pursuant to §5G1.1(b). Defendant filed no objections to the PSR. (Doc. 33). He was sentenced to a term of 240 months imprisonment, the statutory minimum mandatory, and he did not appeal.

In the present motion, defendant contends that counsel was ineffective for failing to challenge the quantity of drugs attributed to him, for failing to explain the elements of conspiracy or challenge the conspiracy charge, and for failing to explain how the guidelines would impact his sentence, and for failing to file an appeal.

## II. LEGAL ANALYSIS

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *Thomas v. Crosby,* 371 F.3d 782, 811 (11th Cir. 2004); *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker,* 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is

reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice." *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice."). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See Chandler v. McDonough,* 471 F.3d 1360 (11th Cir. 2006) (citing *Drew v. Dept. of Corrections,* 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore,* 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."); *Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983).  A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377

F.3d 1208, 1237 (11th Cir. 2004); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); *Gaskin v. Secretary, Dept. of Corrections,* 494 F.3d 997, 1002 (11th Cir. 2007). "*Strickland's* two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990) (citing *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S.Ct. at 2065; *see also Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing

*Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States,* 496 F.3d 1270, 1281 (11th Cir. 2007); *United State v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003); (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)). When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n. 18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United*

*States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Wilson v. United States,* 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629); *United States v. Ross*, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle,* 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle,* 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). With these standards in mind, the court considers the defendant's ineffective assistance of counsel claims.

1. <u>Failure to challenge drug weight at sentencing</u>

Defendant first contends that counsel was constitutionally ineffective because he failed to challenge the quantity of drugs attributed to him in the PSR.

At the plea proceeding, the government stated during its proffer that it made a controlled purchase from the defendant in excess of five grams of crack cocaine, that it had recovered close to 10 grams of crack cocaine from the defendant's residence, and that the entire conspiracy involved in excess of 50 grams. (Doc. 50 at 9). Defendant acknowledged that those facts were true and correct, and that he had done what the government said he had done. (*Id.*)

According to the facts set forth in the PSR, the defendant also admitted to DEA Special Agent Claude Cosey that he had been purchasing cocaine and crack cocaine from Rafael Goodwin in ounce quantities, and that he averaged buying two or three ounces of cocaine and/or crack cocaine every two weeks for approximately four to six months prior to Goodwin's arrest in May of 2006. (PSR ¶ 15). The probation officer determined that defendant should be held accountable for 226.80 grams of cocaine and an equal amount of cocaine base. (PSR ¶¶ 17-18). The guidelines range, which ultimately had no effect on the defendant's sentence due to the application of the statutory minimum mandatory, was 121 to 151 months imprisonment.

As noted above, the twenty year statutory minimum mandatory penalty set forth in § 841(b)(1)(A) was triggered by 50 grams of cocaine base. Therefore, to have had any effect on defendant's sentence, the quantity of drugs attributed to him would have to have been reduced to less than 50 grams. In light of defendant's statements at rearraignment and his admission to Special Agent Cosey, there was no basis for a meaningful and successful objection to the quantity of drugs attributable to him. Counsel is not ineffective for failing to preserve or argue a meritless claim. *See Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably

believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion has never been sustained because such a motion would not have been successful). Defendant is not entitled to relief on this ground.

### 2. Failure to challenge or explain basis for conspiracy charge

Defendant's second claim appears to be that there was no basis for a conspiracy charge–that the government did not establish the elements of conspiracy. He also asserts that counsel was ineffective by not explaining the meaning of conspiracy to him.

With respect to counsel's alleged failure to explain, defendant's statements at rearraignment preclude his claim for relief. It is well established that a defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the pleas constitute a formidable barrier in any subsequent collateral proceedings. *Blackledge v. Allison,* 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); cf. *Holmes v. United States*, 876 F.2d 1545, 1550 (11th Cir. 1989) (trial court satisfied itself during Rule 11 colloquy of voluntary and understanding nature of plea). Solemn declarations made under oath in open court carry a strong presumption of verity. *Blackledge,* 431 U.S. at 73-74, 97 S.Ct. at 1629*; United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994)*.* They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. *Blackledge,* 431 U.S. at 73-74, 97 S.Ct. at 1629; *see also United States v. Gonzalez-Mercado,* 808 F.2d 796, 800 n.8 (11th Cir. 1987); *Downs-Morgan v. United States*, 765 F.2d 1534, 1541 n. 14 (11th Cir. 1985); *Potts v. Zant,* 638 F.2d 727, 750-51 (5th Cir. 1981) (citing *United States v. Sanderson*, 595 F.2d 1021 (5th Cir. 1979));

*Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997); *United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir. 1995); *United States v. Mims*, 928 F.2d 310, 313 (9th Cir. 1991); *United States v. DeFusco*, 949 F.2d 114, 119 (4th Cir. 1991). Consequently, a defendant "bears a heavy burden to show his statements [under oath] were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988); *United States v. Reid*, 2007 WL 4190403 (11th Cir. 2007) (Table, text in WESTLAW); *United States v. Cardenas*, 230 Fed.Appx. 933 2007 WL 2119918 (11th Cir. 2007) (Table, text in WESTLAW). "[I]f the Rule 11 plea taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely." *United States v. Stitzer*, 785 F.2d 1506, 1514, n.4 (11th Cir. 1986) (quoting *United States v. Barrett*, 514 F.2d 1241, 1243 (5th Cir. 1975)). At the plea proceeding, counsel told the court that he had read the plea agreement to the defendant word for word and that he and his client had discussed it, and that it was counsel's belief that the defendant fully understood the proceedings, the charges against him and his agreement with the government. (Doc. 50 at 8). During the same proceeding, defendant clearly told the court under oath that he had discussed his case fully with his attorney, that counsel had explained everything to him, including the plea agreement and everything contained therein, that he had no questions and needed no clarification. (Doc. 50 at 7, 11, 12, 13). He has not carried his burden of showing that he swore falsely in this case.

The remaining portion of defendant's second claim is that the government did not establish the elements of conspiracy. Defendant argues in his memorandum that the evidence established merely a buyer-seller relationship, and that he was merely "a crack smoker with a crack problem that bought crack not for resale to but to smoke." (Doc. 48 at 9). This assertion is without merit.

The elements of conspiracy under § 846 are (1) an agreement between the defendant and one or more persons, (2) to commit an unlawful act or a lawful act by unlawful means. *United States v. Arias-Izquierdo,* 449 F.3d 1168, 1182 (11th Cir. 2006) (citing *United States v. Toler*, 144 F. 3d 1423, 1426 (11th Cir. 1998). The government

need not prove that defendant knew every detail or participated in every stage of the conspiracy, *United States v. Charles*, 313 F.3d 1278, 1284 (11th Cir. 2002) (citing *United States v. Diaz*, 190 F.3d 1247, 1254 (11th Cir. 1999)). However, the government must prove that defendant "knew the essential nature of the conspiracy." *Id.* (quoting *United States v. Payne*, 750 F.2d 844, 859 (11th Cir. 1985)). And, direct evidence of a formal agreement is not required; rather "a common purpose and plan may be inferred from a development and collocation of circumstances." *United States v. McDowell*, 250 F.3d 1354, 1365 (11th Cir. 2001); *United States v. Toler*, 144 F.3d 1423, 1426 (11th Cir. 1998) (crime of conspiracy is "predominantly mental in composition," thus government may demonstrate by circumstantial evidence "a meeting of the minds to commit an unlawful act") (citations omitted); *Arias-Izquierdo,* 449 F.3d at 1182 (citing *United States v. Toler,* 144 F. 3d 1423, 1426 (11th Cir. 1998). Clearly, a conspiracy was established by defendant's admissions during rearraignment.

Defendant's claim that only a buyer-seller agreement existed is disingenuous. "Where the buyer's purpose is merely to buy and the seller's purpose is merely to sell, and no prior or contemporaneous understanding exists between the two beyond the sales agreement, no conspiracy has been shown." *Mercer*, 165 F.3d at 1335 (quoting *United States v. Beasley*, 2 F.3d 1551, 1560 (11th Cir. 1993); *United States v. Burroughs*, 830 F.2d 1574, 1581 (11th Cir.1987)); *United States v. Thompson*, 422 F.3d 1285, 1292 (11th Cir. 2005) ("the existence of a simple buyer-seller relationship alone does not furnish the requisite evidence of a conspiratorial agreement"). In the case of a purchaser of narcotics, agreement may be inferred when the evidence shows "a continuing relationship that results in the repeated transfer of illegal drugs to the purchaser." *Mercer,* 165 F.3d at 1335 (citing *United States v. Beasley*, 2 F.3d 1551 (11th Cir. 1993); *United States v. Bascaro*, 742 F.2d 1335, 1359 (11th Cir. 1984)). However, two parties charged with agreeing to distribute drugs might not be guilty of conspiracy when the evidence demonstrates that the

parties understood their transactions to do no more than support the buyer's personal drug habit. *United States v. Garcia*, 447 F.3d 1327, 1339 (11th Cir. 2006) (quoting *United States v. Dekle*, 165 F.3d 826, 830 (11th Cir. 1999)). The purpose of the buyer-seller rule is to separate consumers, who do not plan to redistribute drugs for profit, from street-level, mid-level, and other distributors, who do intend to redistribute drugs for profit, thereby furthering the objective of the conspiracy. *United States v. Ivy*, 83 F.3d 1266, 1285-1286 (10th Cir. 1996)[1] (citing *United States v. Roberts*, 14 F.3d 502, 513 (10th Cir. 1993) (buyer-seller rule inapplicable because circumstantial evidence showed defendant was more than just an end user); *United States v. Horn*, 946 F.2d 738, 741 (10th Cir. 1991) ("Casual transactions with persons involved in a conspiracy are insufficient to establish that critical connection--one who merely purchases drugs or property for personal use from a member of a conspiracy 'does not thereby become a member of the conspiracy.'") (emphasis added) (quoting *United States v. Fox*, 902 F.2d 1508, 1514 (10th Cir. 1990))).

Defendant was overheard discussing ordering, buying and selling cocaine; a controlled purchase was made from the defendant; and close to 10 grams of crack cocaine were recovered from his residence upon his arrest. These are facts that defendant admitted to be true, and together are sufficient to defeat his current protest that only a buyer-seller relationship existed in this case.

### 3. Failure to explain sentencing guidelines or charges against him

Defendant's third claim, as stated in his § 2255 motion, is that counsel was constitutionally ineffective because he failed to explain the application of the sentencing guidelines to his case. In his memorandum, he expands this claim to contend, essentially, that his plea was not knowing or voluntary because he did not understand the charges against him. Defendant's assertion that his plea was not

---

[1] The Tenth Circuit's decision in *Ivy* is cited with approval in the "Annotations and Comments" of the Eleventh Circuit Pattern Jury Instructions, Criminal, Offense Instruction § 7 (2003).

*Case No: 3:06cr86/LAC; 3:07cv497/LAC/MD*

voluntary is defeated for the reasons expressed in the previous section, as well as the affidavit of counsel in which he avers that he explained both the guidelines and the elements of the charged offense to his client.  (Doc. 52, appendix A).

### 4. Failure to file a notice of appeal

Defendant's fourth ground for relief is that counsel failed to file a notice of appeal as he was instructed to do.  Defendant claims that after sentencing, he told counsel to file an appeal of his 240 month sentence.

If a defendant specifically instructs his attorney to file a notice of appeal, a lawyer who disregards this instruction acts in a manner that is professionally unreasonable.  *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000) (citing *Rodriguez v. United States*, 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969); *Peguero v. United States*, 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999)).  Since a defendant whose lawyer fails to file an appeal upon request has been denied an entire judicial proceeding, prejudice is presumed and the defendant is entitled to a belated appeal.  *Id.*; *Gomez-Diaz v. United States*, 433 F.3d 788, 792 (11th Cir. 2005).  There is no bright-line rule about counsel's duty to consult with his client about an appeal.  See *Flores-Ortega, supra.*  However, the decision whether to file an appeal is a decision that is "personal" to the defendant.  See *Roe v. Flores-Ortega*, 528 U.S. 470, 479, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000); *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983) (citing *Wainwright v. Sykes*, 433 U.S. 72, 93 n. 1, 97 S.Ct. 2497, 2509 n. 1, 53 L.Ed.2d 594 (1977)); *Brown v. Artuz*, 124 F.3d 73, 77 (2nd Cir. 1997) (citing *Fay v. Noia*, 372 U.S. 391, 438-440, 83 S.Ct. 822, 848-849, 9 L.Ed.2d 837 (1963)).  Key to this case is a phone call from defendant's mother withdrawing the defendant's request for an appeal.

Counsel explains in his affidavit that during his representation of the defendant, he and his client spoke on more than one occasion about defendant's

right to appeal. Counsel dictated a memorandum to the file contemporaneous with the events in question detailing his conversations with the defendant and his family. This memorandum to the file is incorporated by reference into counsel's affidavit and provides as follows:

> On November 20, 2006, I traveled to the Escambia County Jail to visit Nicholas Cunningham. Mr. Cunningham had previously informed me following his sentencing that he did not wish to appeal his sentence and that he wished to leave open his option to cooperate with the Government in hopes of the Government filing a post-sentencing Rule 35 motion. On or about November 18, 2006, after the sentencing, I received a call from a woman who identified herself as being Mr. Cunningham's sister. She informed me that she wanted Nicholas to appeal the case and that he had told her he would appeal. She also stated that she wished to hire Nicholas a lawyer to represent him on appeal. Because this information conflicted with what Mr. Cunningham had told me in court, I made the trip to Escambia County on November 20, 2006. During this conversation, I explained to Nicholas that I knew of no issue on appeal that would affect his sentence, but that if his family hired him a lawyer, they could challenge the effectiveness of my representation of him. I believe Nicholas did not want to appeal and understood that it could affect his Rule 35, but his sister had told him not to sign any documents and to appeal the sentencing.
>
> After going back and forth with his own decision, he finally instructed me to file a Notice of Appeal.
>
> On November 21, 2006, I received a call from Mr. Cunningham's mother, who spoke with my secretary, Christina. Christina took a note indicating that Nicholas had told her to call me to tell me that he in fact did not wish to appeal. Therefore, due to this phone conversation with Mr. Cunningham's mother on November 21, 2006, no Notice of Appeal will be filed in this case.

(Doc. 52, appx. A). Counsel does not indicate either in the memorandum or the affidavit that he contacted his client again to verify his position, or that a follow-up letter was written. It is not obvious from the submissions why counsel deemed defendant's mother's phone call with respect to defendant's position on an appeal

to be more credible than that of defendant's sister, such that he did not personally confirm defendant's wishes.

In his reply, the defendant conspicuously neither confirmed nor denied that he requested that his mother call counsel to withdraw his request. This court noted that if defendant had asked his mother to do this, his ineffective assistance of counsel claim should be withdrawn as his wishes with respect to an appeal were honored. Therefore, the court entered an order directing defendant to file either: (1) a notice to the court indicating his intent to withdraw this claim, or (2) a supplemental response and supporting affidavit sworn under penalty of perjury setting forth his version of the facts surrounding his mother's instructions to counsel with respect to the notice of appeal. (Doc. 58). Defendant was advised that failure to respond would be construed as a concession that he had instructed his mother to phone counsel to withdraw his request that counsel file a notice of appeal. The government was also directed to submit a supplemental memorandum addressing the reasonableness under the circumstances of counsel's reliance on a phone call from his client's mother with respect to his appeal. The parties have filed their supplemental responses. (Doc. 59 & 61).

Defendant's supplemental memorandum is not instructive with respect to his mother's phone call. Nor is the appended affidavit in which defendant states:

> I swear that after my federal sentencing *I'm not sure if I did or did not tell my mother to call my attorney, Mr. James Scroggins, and tell him not to file an appeal*. I do (sic) that I was angry with the sentencing developments and I did want to appeal the sentence. I also know that I did tell Mr. James Scroggins, my attorney at the county jail that I did want to file an appeal and for him to do so in my behalf.

(Doc. 59, exh. 1) (emphasis added). Defendant's inability to recall a fact that is central to his claim does not prevent the court from ruling on the matter. Defendant does not deny that he told his mother to call counsel and withdraw his request that counsel file an appeal. As noted above, if his mother made the call at defendant's behest, clearly counsel was not constitutionally ineffective because he acquiesced

to defendant's wishes by not filing an appeal. Likewise, if defendant made this request and later changed his mind without communicating with counsel, counsel cannot be faulted for his lack of clairvoyance. Thus, to prevail on his claim, defendant must establish both that his mother made the phone call to counsel against his wishes, and that counsel's reliance on her call to ascertain defendant's wishes was unreasonable.

In its response the government notes the absence of controlling case law supporting the position that it is unreasonable for the defendant's attorney to rely on instructions from the client's mother, as well as the lack of any case law expressly holding the opposite. It suggests that messages relayed by close family members are commonly and reasonably relied upon, and that defendant has failed to establish that no competent counsel would have taken the action that counsel did in this case. See *Dingle,* 480 F.3d at 1099.

The court concurs with the government's position that due to the defendant's incarceration, it is not per se unreasonable for counsel to rely on a message from a family member. The court finds it somewhat unusual that counsel personally verified defendant's wishes after receiving a phone call indicating that the defendant wanted to appeal, but did not do so after receiving a phone call with the opposite message. However, in light of counsel's prior conversations with the defendant concerning the lack of meritorious appealable issues and the potential disadvantage to filing an appeal, counsel's course of action was not "so patently unreasonable that no competent attorney would have chosen it." *Dingle*, 480 F.3d at 1099; *Gordon,* 496 F.3d at 1281. The phone call from defendant's mother comported with counsel's general understanding of defendant's expressed wishes since sentencing, whereas the first call from defendant's sister was in conflict and had potentially negative ramifications for the defendant. In any event, the court finds that defendant has not established that counsel performed in a constitutionally deficient manner when he

relied upon the phone call from defendant's mother and did not pursue a direct appeal.

**Based on the foregoing, it is respectfully RECOMMENDED:**

**The motion to vacate, set aside, or correct sentence (doc. 40) be DENIED.**

**At Pensacola, Florida, this 29th day of May, 2008.**

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636;** *United States v. Roberts***, 858 F.2d 698, 701 (11th Cir. 1988).**